DJ/HDM:PJC
F. #2021R00440

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
*   MAY 1, 2023    *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

TAESUNG KIM,
    also known as "Terry," and
DACHENG LU,
    also known as "Bruce,"

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No.  23-CR-191
(T. 18, U.S.C., §§ 371, 982(a)(1),
982(a)(7), 982(b)(1), 1349, 1956(h) and
3551 et seq.; T. 21, U.S.C., § 853(p))

Judge Hector Gonzalez
Magistrate Judge Peggy Kuo

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    Medicare and Medicaid

        1.    Medicare was a federal health care program providing benefits to persons who were at least 65 years old or disabled.   Medicare was administered by the Centers for Medicare and Medicare Services ("CMS"), a federal agency under the United States Department of Health and Human Services.   Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts.   Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices and home health agencies.   Medicare Part B covered outpatient hospital services and professional services

provided by physicians and other providers.   Medicare Part C—also known as Medicare

Advantage—offered beneficiaries the opportunity to secure coverage from private insurers for

many of the same services that were provided under Parts A and B, in addition to certain

mandatory and optional supplemental benefits.   Medicare Part D provided prescription drug

coverage to persons who were eligible for Medicare.

        3.      Medicaid was a federal and state health care program providing benefits to

individuals and families who met specified financial and other eligibility requirements, and

certain other individuals who lacked adequate resources to pay for medical care.   CMS was

responsible for overseeing Medicaid in participating states, including New York State.

Individuals who received benefits under Medicaid were referred to as "recipients."

        4.      Medicaid covered the costs of medical services and products ranging from

routine preventive medical care for children to institutional care for the elderly and disabled.   In

New York State, Medicaid provided coverage to its recipients for prescription drugs.   Medicaid

recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-

service" enrollment or through Medicaid Managed Care plans, which were administered by

private insurance companies that were paid by Medicaid.

        5.      As part of their insurance benefits, some Medicare beneficiaries and

Medicaid recipients received a certain amount of credit per month that could be spent on eligible

over-the-counter ("OTC") non-prescription items such as analgesics, diabetes supplies,

antihistamines, weight management supplies, sleep aids, vitamins, toothpaste, durable medical

equipment and other products.   OTC money could not be spent on items such as cosmetics, hair

care products, dry-skin lotions and perfumes.   The monthly OTC credit was pre-loaded onto

debit cards known as "over-the-counter cards" or "OTC Cards," which were issued to

beneficiaries and recipients.   Any funds that were not used by the end of the month were forfeited, and the OTC Cards were reloaded each month with refreshed funds.   Pharmacies generally dispensed OTC products to Medicare beneficiaries and Medicaid recipients by swiping the OTC Cards through an electronic payment system that debited the cost of approved OTC products.

6.       Medicare, Medicare Advantage, Medicaid and Medicaid Managed Care plans (collectively the "Plans") were "health care benefit programs," as defined by Title 18, United States Code, Section 24(b) and referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b.

7.       Medical providers must enroll with Medicare and Medicaid in order to submit claims for reimbursement to the Plans.   Claims are typically submitted electronically and identify the service or good provided to the patient.   Medical providers were authorized to submit claims to the Plans only for services they actually rendered and were required to maintain patient records verifying the provision of services.

8.       By submitting a claim to the Plans, a provider certified, among other things, that the services were rendered to the patient, were medically necessary and were not rendered as a result of kickbacks or bribes.

B.       The Defendants and Relevant Entities and Individuals

9.       The defendant TAESUNG KIM, also known as "Terry," was a part owner of Elmcare Pharmacy Inc. ("Elmcare"), Huikang Pharmacy Inc. ("Huikang"), NY Elm Pharmacy, ("NY Elm") and 888 Pharmacy Inc. ("888 Pharmacy") (collectively, the "Pharmacies").

10.     The defendant DACHENG LU, also known as "Bruce," was a part owner of 888 Pharmacy and Huikang.

11.     Elmcare was a retail pharmacy located in Flushing, New York.

12.     Huikang was a retail pharmacy located in Brooklyn, New York.

13.     NY Elm was a retail pharmacy located in Flushing, New York.

14.     888 Pharmacy was a retail pharmacy located in Flushing, New York.

15.     Co-conspirator-1, an individual whose identity is known to the Grand Jury, was a Huikang employee.

16.     Co-conspirator-2, an individual whose identity is known to the Grand Jury, was a supervising pharmacist and a part owner of Huikang.

17.     Co-conspirator-3, an individual whose identity is known to the Grand Jury, was a manager and a part owner of 888 Pharmacy.

18.     Co-conspirator-4, an individual whose identity is known to the Grand Jury, was an employee of Elmcare and NY Elm.

19.     Medical Practice-1, an entity the identity of which is known to the Grand Jury, was a medical practice in Brooklyn, New York.

20.     Medical Practice-2, an entity the identity of which is known to the Grand Jury, was a medical practice in Brooklyn, New York.

21.     Entity-1 is a business entity the identity of which is known to the Grand Jury.

22.     Individual-1, an individual whose identity is known to the Grand Jury, was a Medicare beneficiary and Medicaid recipient who filled prescriptions at Elmcare, Huikang and NY Elm.

23.     Individual-2, an individual whose identity is known to the Grand Jury, was a Medicare beneficiary and Medicaid recipient who filled prescriptions at 888 Pharmacy.

II.     The Fraudulent Scheme

24.     In or about and between January 2015 and December 2022, the defendants TAESUNG KIM and DACHENG LU, together with others, agreed to execute and executed a scheme to submit and cause the submission of claims to the Plans for the dispensing of pharmaceutical and OTC products that were medically unnecessary, procured by the payment of kickbacks and bribes and not provided to Medicare beneficiaries and Medicaid recipients.

25.     As part of the scheme, the defendants TAESUNG KIM and DACHENG LU directed employees of the Pharmacies, including Co-conspirator-1, Co-conspirator-2, Co-conspirator-3 and Co-conspirator-4, to refer Medicare beneficiaries and Medicaid recipients, including Individual-1 and Individual-2, to Medical Practice-1, Medical Practice-2 and other medical practices where they were prescribed medically unnecessary topical medications and pain patches to be dispensed by the Pharmacies and billed to the Plans.

26.     As further part of the scheme, the defendants TAESUNG KIM and DACHENG LU, together with others, including Co-conspirator-2 and Co-conspirator-3, paid kickbacks and bribes, directly and indirectly, to Medical Practice-1 in the form of salaries, staff, rent and bonuses, to induce the medical providers at Medical Practice-1 and Medical Practice-2 to write prescriptions and refer Medicaid recipients and Medicare beneficiaries to Huikang and 888 Pharmacy, among other pharmacies the defendants owned.

27.     As further part of the scheme, the defendants TAESUNG KIM and DACHENG LU directed employees of the Pharmacies, including Co-conspirator-1, Co-conspirator-2, Co-conspirator-3 and Co-conspirator-4, to offer illegal kickbacks and bribes in the

form of in-store credit to Medicare beneficiaries and Medicaid recipients who filled prescriptions at the Pharmacies.

28.     As further part of the scheme, employees of the Pharmacies routinely waived co-payments owed by Medicare beneficiaries and Medicaid recipients for prescription medications that the Pharmacies dispensed and billed to the Plans, and the defendant TAESUNG KIM directed employees to falsify records regarding the waiver of these co-payments.

29.     The defendants TAESUNG KIM and DACHENG LU also directed employees of the Pharmacies, including Co-conspirator-1, Co-conspirator-2, Co-conspirator-3 and Co-conspirator-4, to submit false and fraudulent claims to the Plans for OTC products that were not actually dispensed and were procured by providing illegal kickbacks and bribes in the form of the equivalent value in supermarket gift certificates or cash.

30.     In or about and between January 2015 and December 2022, Medicare paid the Pharmacies more than approximately $24 million and Medicaid paid the Pharmacies more than approximately $5.4 million for prescriptions that were medically unnecessary, not actually provided and induced by the payment of illegal kickbacks and bribes.

31.     In or about and between October 2015 and December 2022, the defendants TAESUNG KIM and DACHENG LU, together with others, agreed to execute and executed a scheme to engage in deceptive acts and contrivances intended to hide information, mislead, avoid suspicion and avert further inquiry into their health care fraud and kickback scheme.

32.     In order to obtain cash to pay kickbacks to Medicare beneficiaries and Medicaid recipients at the Pharmacies, and in order to obtain cash that could be dispersed as unrecorded profits among the owners of Elmcare, Huikang, NY Elm and 888 Pharmacy, the defendants TAESUNG KIM and DACHENG LU, together with others, wrote checks to various

trading companies that gave the appearance of legitimate business expenses, including more than $650,000 to Entity-1 in 2018, but in reality, were actually used to generate cash to pay kickbacks.

33.     The defendants TAESUNG KIM and DACHENG LU, together with others, also transferred fraud proceeds between Elmcare, Huikang and 888 Pharmacy to disguise the source, nature and ownership of those proceeds.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

34.     The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

35.     In or about and between January 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants TAESUNG KIM, also known as "Terry," and DACHENG LU, also known as "Bruce," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud Medicare, Medicare Advantage, Medicaid and Medicaid Managed Care plans, which are health care benefits programs as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs in connection with the delivery of a payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Conspiracy to Pay Health Care Kickbacks)

36.     The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

37.     In or about and between January 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants TAESUNG KIM, also known as "Terry," and DACHENG LU, also known as "Bruce," together with others, did knowingly and willfully conspire:

(a)     to offer and pay any remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such person to refer Medicare beneficiaries and Medicaid recipients for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole or in part by a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

(b)     to offer and pay any remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such person to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering goods, facilities, services and items for which payment may be made in whole or in part by a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

38.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants TAESUNG KIM, also known as "Terry," and DACHENG LU, also known as "Bruce," together with others, committed and caused the commission of, among others, at least one of the following:

OVERT ACTS

(a)      On or about December 10, 2018, KIM sent a text message to, among other individuals, LU and Co-conspirator-3, discussing payments to medical doctors who practiced at Medical Practice-1.

(b)      On or about May 3, 2019, KIM and LU received a text message from Co-conspirator-3 that referred to supermarket gift certificates and stated, "[w]e don't have enough money for [prescription drugs], because need to buy lots of coupons this month."

(c)      On or about January 10, 2020, KIM and LU received a text message from Co-conspirator-3 that referred to kickbacks to pharmacy customers and stated, "[r]ecently so many pts ask for cash."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT THREE
(Money Laundering Conspiracy)

39.      The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

40.      In or about and between October 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants TAESUNG KIM, also known as "Terry," and DACHENG LU, also known as "Bruce," together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (a) health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349, respectively; and (b) paying health care kickbacks and conspiracy to pay health care kickbacks, in violation of

Title 42, United States Code, Sections 1320a-7b(b)(2)(A) and (b)(2)(B), and Title 18, United

States Code, Section 371, respectively, knowing that the property involved in such financial

transactions represented the proceeds of some form of unlawful activity, and knowing that such

financial transactions were designed in whole and in part to conceal and disguise the nature, the

location, the source, the ownership and the control of the proceeds of one or more of the

specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE AND TWO

41.     The United States hereby gives notice to the defendants that, upon their

conviction of either of the offenses charged in Counts One and Two, the government will seek

forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any

person convicted of a federal health care offense to forfeit property, real or personal, that

constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission

of such offenses.

42.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United

States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT THREE

43.     The United States hereby gives notice to the defendants that, upon their

conviction of the offense charged in Count Three, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982(a)(1), which requires any person

convicted of such offense to forfeit any property, real or personal, involved in such offense, or

any property traceable to such property.

44.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

>    (a)     cannot be located upon the exercise of due diligence;

>    (b)     has been transferred or sold to, or deposited with, a third party;

>    (c)     has been placed beyond the jurisdiction of the court;

>    (d)     has been substantially diminished in value; or

>    (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

12

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*By P.J. Campbell, Trial Attorney*
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F. #2021R00440

No.

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

TAESUNG KIM,
also known as "Terry," and
DACHENG LU,
also known as "Bruce,"

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(1), 982(a)(7), 982(b)(1), 1349, 1956(h)
and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
                                                            *Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_____
                                                                *Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Patrick J. Campbell, DOJ Trial Attorney (718) 254-6366*