

The Law Office of Kevin J. Keating, P.C.
666 Old Country Road, Suite 900
Garden City, NY 11530
516-222-1099 • 212-964-2702
kevin@kevinkeatinglaw.com
Garden City • Manhattan

January 13, 2026

**Via ECF**
Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Taesung Kim*
                  **Docket No. 1:23-cr-00191-ARR**

Dear Judge Gujarati:

      As Your Honor is aware, I represent Taesung Kim, who is scheduled to be sentenced by the Court on January 27, 2026. I respectfully request that the Court consider the contents of this submission when imposing sentence.

      I write with several purposes. First, I provide an overview of the facts and circumstances of this case and the Guidelines applicable to this matter. In doing so, I note several facts. First, while the defendant's conduct was wrongful for which he has accepted full responsibility, I note that the practice of independent pharmacies, like those in this case, offering customers things of value as inducements to obtain their patronage in an effort to compete against nationwide retail pharmacy chains had become an endemic reality in the communities in which these events occurred. Additionally, I detail the uncontested fact that the *actual* amount earned by the defendant from the offense conduct was a fraction of the Guidelines loss amount in this case. Finally, consistent with the terms of the Plea Agreement negotiated between the parties, I submit that Kim's adjusted Guidelines offense level should be set at 26, and not 28, as advocated by the Probation Department.

      Next, I detail Kim's, otherwise, most commendable life's history, characterized by an extraordinary work ethic, and extreme devotion to his wife and children. In this regard, I offer testimonials from his family members, including his son (a United States Navy pilot); his daughter (a recent law school graduate); his wife, and his longtime parish priest.

      Finally, I argue that a combination of factors in this case militate in favor of the imposition of a non-Guidelines sentence. These include Kim's extraordinary acceptance of responsibility which, beyond the entry of a timely and complete plea of guilty, ████████████████████ ██████████████████████████████████████████████████████████████████████████ and his pre-payment of virtually the entirety of his $6 million forfeiture obligation.

Hon. Diane Gujarati
United States District Court
January 13, 2026
Page 2

### Kim's Offense Conduct and the Guidelines Applicable to His Case

As will be more fully detailed below, Kim lawfully entered the United States with his family in 1995 at the age of 30. He immediately began full-time employment, and from 1997-2007, worked long hours as a manager for Raysol Pharmacy located in Manhattan, New York. Thereafter, from 2008-2010, Kim worked as a full-time manager for a durable medical equipment company, located in Flushing.

With savings earned through his employment, in 2011, Kim became a partner with others in a pharmacy located in Queens. In the years that followed, Kim would ultimately obtain a partial ownership interest with others in six pharmacies located in Flushing and Brooklyn, New York. Typically, Kim's ownership interest would approximate 25% in these entities.

Beginning in October 2015, Kim and others began the practice of providing financial inducements to customers to obtain their patronage. This practice was wrongful, but it had become endemic among independently owned pharmacies in these communities in an effort to compete against nationwide drugstore chains. Typically, these inducements consisted of providing customers with either supermarket gift cards, cash, in-store credit, or the waiver of co-payments associated with their purchased prescriptions. Soon, the practice expanded to include the pharmacies' payment of rent and staff salaries to local doctors in exchange for their agreement to refer their patients to the pharmacies, while also writing certain topical pain prescriptions that would generate profit to the pharmacies.

As noted, the conduct was wrongful, and Kim has accepted full responsibility for his involvement in these events. But, certain facts are worth noting. While through his Plea Agreement Kim has stipulated to a Guidelines loss amount more than $9.5 million associated with the entirety of the conduct, there is no dispute that Kim's actual earnings from the offense conduct was a fraction of this sum. The reasons are quite clear. First, as can be seen, these pharmacies spent considerable sums inducing patients and doctors to patronize the entities. Next, this is *not* a case where billings were submitted for prescriptions that were never filled by the pharmacy. Here, in each and every case, the pharmacy at issue filled the prescriptions and, by doing so, obviously spent considerable sums purchasing the prescribed medications. Notably, this conduct distinguished Kim and the related defendants from others charged with similar conduct where the prescribed medications were never filled—behavior that exponentially increased the profits for those individuals. Finally, as noted, for each of these pharmacies, Kim was but one of several owners who shared in the profits.

Hon. Diane Gujarati
United States District Court
January 13, 2026
Page 3

In terms of the Guidelines applicable to Kim's case, it is respectfully submitted that they are accurately set forth in the negotiated Plea Agreement executed by the parties in this case, which are set forth below:

> Base Offense Level (§2B1.1(a)(2)): +6
> Loss of More than $9.5 Million (§2B1.1(b)(1)(k)): + 20
> Conviction Under 18 USC §1956 (§2S1.1(b)(2)(B)): +2
> Leadership Enhancement  (§3B1.1(a)): +2
> Acceptance of Responsibility (§3E1.1(a)(b)): -3
> Global Disposition: -1
>
> (Plea Agreement, Court Ex. 1, p. 2, 3)

This calculation results in a total offense level of 26, with an imprisonment range of 63-78 months.

The Probation Department marginally disagrees with this calculation.  As set forth in their Second Addendum to the PSR dated October 24, 2025, Probation agrees with the above analysis, but believes that a two point increase for obstructive conduct by the defendant is warranted. (Second Addendum, ¶58).  This enhancement would result in a total offense level of 28, with an imprisonment range of 78-97 months.

As indicated, the Government's position on the Guidelines applicable to Kim as set forth in the Plea Agreement does not contain an obstruction enhancement, and there is no dispute that the Government was fully aware of the defendant's purported conduct in this regard at the time they negotiated the terms of the Plea Agreement.

It is respectfully submitted that under the totality of the facts of this case, the Court should adopt the Guidelines calculation as set forth in the negotiated Plea Agreement.  As noted, the Government's negotiated and stipulated plea agreement was entered at a time when the Government was *fully aware* of the conduct cited by the Probation Department as warranting the two-point obstruction enhancement.  Moreover, this conduct was *voluntarily disclosed by Kim* in proffer sessions with the Government prior to the entry of his guilty plea.  Finally, the conduct at issue clearly had no bearing on the Government's ability to successfully prosecute this case.

For all of these reasons, it is respectfully submitted that the Court should set Kim's total offense level at 26, consistent with the terms of the Plea Agreement.

Hon. Diane Gujarati
United States District Court
January 13, 2026
Page 4

**It Is Respectfully Submitted That The Defendant's, Otherwise, Most Commendable Life's History, Characterized By Hard Work And A Deep Devotion To This Family Is Deserving Of This Court's Strongest Consideration**

Mr. Kim is 61 years old, has never previously been arrested, has been married for 32 years, and shares a loving and devoted relationship with his grown children.

As set forth in the PSR, Kim was born and raised in Seoul, South Korea. His parents were working-class people and he was raised under middle-income socioeconomic conditions, one of five children born to the union of his parents. Kim attended and graduated high school in a timely fashion, earning good grades. He thereafter attended college in South Korea, graduating with a Bachelor's Degree in Science in 1987 at the age of 23.

In 1988, Kim entered the South Korean Air Force, where he would serve until 1991, having earned the rank of First Lieutenant. From 1991 until 1995, Kim worked as a financial advisor for a private company in South Korea.

In 1993, he married his present wife, and in 1994, they had their first child, their daughter, Jungsuh. That same year, the Kims lawfully immigrated to the United States. Soon thereafter, Kim obtained employment as a manager of a pharmacy on 116th Street in Manhattan. Kim would remain at this pharmacy, working long hours as a salaried employee, for 11 years. In 1999, the Kims gave birth to their second child, William.

In 2007, Kim briefly left the pharmacy business, becoming a bookkeeping manager for a company located in Port Washington, New York. Kim left this position in 2008, when he accepted a position as a manager of a medical equipment company in Flushing, New York.

Utilizing his savings, in 2011, Kim became part-owner of Happy Care Pharmacy, which would operate until 2020. As noted above, Kim thereafter purchased partial ownership interests in a number of other independent pharmacies located in Flushing and Brooklyn. As was his custom, throughout, Kim worked long hours and, otherwise devoted himself to his wife and children.

As indicated, Kim's daughter Jungsuh is now 31 years old and lives a commendable, productive, law-abiding life. She attended Fordham University and, thereafter, Brooklyn Law School, graduating in 2025. She is single, and works in the legal department of the Nationwide Insurance Company.

Kim's son William is 26 years old and graduated Boston University with a major in Marine Science in 2021. Laudably, William thereafter began studying for the rigorous Aviation Selection

Hon. Diane Gujarati
United States District Court
January 13, 2026
Page 5

Test Battery to enter Navy flight school. Kim passed the exam and was commissioned as a Student Naval Aviator in 2022. Last year, Kim graduated Navy flight school, and is currently stationed in San Diego at Naval Air Station North Island. He is a Lieutenant Junior Grade, with seven years remaining in his service commitment and is a Seahawk helicopter pilot trained for combat missions.

I enclose moving testimonials offered by Kim's daughter, son, and wife. Kim's daughter writes of the "bittersweet moment" of having recently graduated law school "while grappling with the reality of her father's case." She writes that she grew up watching her father "work tirelessly, often without recognition or complaint." She notes of her father's perseverance and devotion to his family. Despite his constant work, she writes of her father's support during law school.

> During law school my father's support became even more evident. He would drive me back to school after every holiday break, offered to take me to dinner at the end of long weeks or drop off groceries because he knew I didn't have time to go to the store. Although these gestures may seem small, they were powerful reminders of the love and support he provided despite his limited time and constant responsibilities. As I have grown older, I have come to understand that no matter how busy my father was, he would always sacrifice time to put his family first to make sure that we felt supported.

Ms. Kim also writes of the difficulties over the last several years since her father's arrest, and the change she has witnessed in her father.

> I respectfully ask the Court for leniency and compassion when considering my father's sentence. He is not a perfect man, but he is a good person and a better father; he is someone who has always tried to provide for his family and improve himself. I know he has reflected deeply on the mistakes that brought him here and I believe he is committed to learning from them. . . I think he has come to realize that the most valuable part of his life is the time he shares with his family. Despite his shortcomings, I am confident that he will carry these lessons with him and continue to strive to become a better person.

In concluding, Ms. Kim seeks leniency and compassion from the Court.

Hon. Diane Gujarati
United States District Court
January 13, 2026
Page 6

William Kim offers similar sentiments. He writes of entering Officer Candidate School after graduating college, and his current service as a Naval Aviator with Helicopter Marine Maritime Strike Squadron 41, in San Diego, noting that none of his accomplishments "could have been done without the support of my father at each and every step."

Like his sister, he writes of his childhood memories of watching his father's tireless work while, at the same time, ensuring that his limited time off was spent encouraging his children.

> My earliest memories of my father was when he worked as a manager at a small pharmacy in Harlem. He often worked late into the evenings and on many weekends as well to support our family. In spite of the demanding hours, he made sure to spend his limited days off giving my sister and I experiences that nurtured our interest and dreams. . . Only as an adult did I come to learn that many of these happy memories during my childhood were juxtaposed with our family's financial situation hanging in a precarious balance. Despite these challenges, my father always supported our aspirations and provided us with every opportunity to pursue them. My position today as a Naval Aviator and my sister's recent graduation from Brooklyn Law School and passing the bar exam are a direct testament to the love and support my father showed over the past two decades.

He, too, writes of the difficulty watching his "father live in fear and regret" over his case during the last few years and the "anguish this case has caused our entire family," which weighs heavily on his father. Confident that the years his father has spent reflecting on this case has shown him "the error of his ways, he seeks compassion from the Court."

Kim's wife of 32 years, Hyunhee, offers similar sentiments. She writes of their initial difficulties of moving to America "as an immigrant without friends or family." She notes:

> My husband has always been an intelligent, sincere and humble person. Although not a man of many words, he has a deeply caring heart. He worked tirelessly to support and protect our family, even when it meant long hours away from home. Throughout our 32 years of marriage, I often felt lonely as he devoted himself fully to his work, but I know that his sacrifices came from love and a desire to give our children stability and opportunities.

She writes of the difficulties in their life during the three year pendency of this case-"a shocking and paining experience that turned my life upside down," and notes of her belief that her husband "has gained a deeper understanding of his mistakes and the principles that must guide the rest of his life." In concluding, she offers:

> While it is only right that my husband be held accountable for his actions, I respectfully request and humbly ask the Court to consider leniency in light of my husband's character, lifelong hard work, and sincere remorse. If given the chance, I believe he will dedicate the rest of his life with integrity and gratitude.

Finally, the Reverend Raphael Lee, the Pastor of the Parish of St. Joseph offers his sentiments. Rev. Lee advises that Kim and his wife have been dedicated and active members of the Parish community for many years. Rev. Lee notes that Kim confided in him about his situation in 2024, and that it was apparent that Kim was remorseful, fearful of the possible consequences, and "determined to rectify the wrong he had done, whatever the cost may be."

Rev. Lee provides detail of the Kims' quiet dedication to the Parish community, describing Terry as "one of the most diligent members of the Parish community." About Kim, he adds:

> He is always present at various Parish events and quietly serves others behind the scenes. He does not like to be noticed and always finds ways to accommodate others and relinquish praise for others. Even when others fall short and miss in the preparation, Terry never shied away from stepping up and doing whatever was necessary to fill in the void. His humble demeanor has always been a wonderful gift for our Parish community.

In concluding, Rev. Lee describes Kim and his wife as "a model family and Terry regrets the mistake he made."

Finally, while it is anticipated that Mr. Kim will make a statement to the Court at his sentencing proceeding, enclosed is a brief letter authored by Kim setting forth his remorse and regret for these events. Kim notes that since his indictment in 2023,

> I have done everything I can to show my deep remorse and desire to live my life as a law-abiding citizen. I sold or closed all the pharmacies and medical related businesses I had operated. I am doing my best to recover the damages by selling my building, providing all of my bank accounts, and investment accounts to pay

as much as the criminal fines imposed by the Government as possible. I am also cooperating with the Government through my attorney to obtain any necessary information or assistance.

In concluding, among other things, Kim notes his deep sorrow for putting his family "through such a shameful situation."

As can be seen, Mr. Kim's life has, indeed, been characterized by extreme hard work and a deep devotion to his family—attributes which are quite apparent by the accomplishments of his children and the sentiments offered in the enclosed testimonials.

It is respectfully requested that the Court give these facts her strongest consideration.

**It Is Respectfully Submitted That Kim's Life's History; The Loss-Driven Nature Of The Guidelines In This Case; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Factors, In Combination, Which Militate In Favor Of A Non-Guidelines Sentence**

As set forth above, there is no dispute that Kim's life's history has, otherwise, been most commendable and we respectfully request that the Court give this fact strong consideration. Beyond this, it is respectfully submitted that other factors are deserving of the Court's consideration. First, Kim's acceptance of responsibility has been of the highest order, including his significant efforts to assist the Government in this and other matters, and undertaking considerable efforts to fully *pre-pay* his large forfeiture obligation in this matter. Further, it is undeniable that, as with most fraud-based cases, here the advisory Guidelines are largely driven by the loss calculation—at best, a rough proxy for actual culpability. We respectfully request that the Court additionally consider these factors when imposing sentence.

    A.    **The Loss-Driven Nature Of The Guidelines Calculation In This Case**

As noted, Kim has fully acknowledged his offense conduct and the wrongfulness of his behavior. But, as in most fraud-based cases, here the advisory Guidelines are substantially driven by the loss calculation which, it is submitted is a rough proxy for actual culpability (*see United States v. Adelson*, 441 F. Supp. 2d 506, 512 (SDNY 2006), criticizing "the utter travesty of justice that sometimes results from the Guidelines' fetish with abstract arithmetic, as well as the harm that Guidelines calculations can visit on human beings if not cabined by commonsense.") Here, for several reasons, it is respectfully submitted that the loss figure—which largely fuels the total Guidelines offense level—over represents the seriousness of the offense.

Hon. Diane Gujarati
United States District Court
January 13, 2026
Page 9

      Kim has stipulated that the pharmacies submitted over $9.5 million in improper claims and the $24 million loss figure set forth in the Plea Agreement. But, it is undisputed that the benefit to Kim did not approach this figure, which merely represents the gross amount billed to the Government, not Kim's profit. Additionally, this is <u>not</u> the commonly prosecuted case in which medications were billed to the Government which were not provided to the patient. Here, in each and every case when a patient presented a prescription, the pharmacy provided the customer with the medication—an appropriate process which, among other things, substantially lessened the profit margin of the pharmacy.

      Finally, while Kim and the related defendants have acknowledged participating in the endemic practice of providing financial incentives to customers and doctors which automatically render the prescriptions unlawful, it is not the case (nor has it been alleged) that all of the prescriptions were medically unnecessary. These pharmacies serviced countless legitimate customers in these communities for many years and incurred the customary expenses of operating a business. As such, the net profits were substantially less than the gross "loss amount" upon which the Guidelines are heavily based. Accordingly, without retreating from accountability, we respectfully submit that the 20 level Guidelines loss calculation overstates the actual level of culpability.



███████████████████████████████████████████████████.  Beyond identifying his financial accounts and assets, since the entry of the agreement, Kim has sold a residence and a commercial property—at his expense—and remitted the proceeds to the Government in an effort to pre-pay his forfeiture obligation. As of today, Kim has pre-paid the vast majority of his forfeiture obligation.

**Conclusion**

    Mr. Kim is 61 years old, and his life's history has, otherwise, been most commendable. His quiet life has been largely characterized by hard work and a strong devotion to his family. His conduct in this case was wrongful, for which he has paid a deep price. Each of the pharmacies at issue have closed and, commendably, Kim has been working to pre-pay his forfeiture obligation, which has nearly been accomplished.

    As set forth in this submission, his acceptance of responsibility has been of the highest order and his remorse for these events is evident. It is respectfully submitted that, based upon all of these factors, justice would be served by the imposition of a non-Guidelines sentence.

    I will be prepared to elaborate on these facts at the sentencing proceeding.

    Thank you for your consideration.

    Very truly yours,

    /s/ *Kevin J. Keating*

    KEVIN J. KEATING

KJK/dg

cc:    AUSA Patrick J. Campbell

Honorable Judge Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201,

Dear Honorable Gujarati,

I hope this letter finds you well. My name is William Kim. I am writing this letter on behalf of my father Terry Kim who is to be sentenced in December. I appreciate the opportunity to share perspective on who my father is as a person beyond the circumstances that bring him before the Court.

I am the youngest of two children. I grew up in Harrison New York and attended Boston University majoring in Marine Science. Following my college graduation I was commissioned through Officer Candidate School in Newport Rhode Island as an Ensign in the United States Navy. I am now a Lieutenant Junior Grade serving as a Naval Aviator with Helicopter Maritime Strike Squadron 41 in San Diego California. While these milestones were of my own undertaking, they could not have been done without the tacit support of my father at each and every step.

Throughout my childhood I watched my father work tirelessly to ensure that my sister and I had every opportunity to succeed. My earliest memories of my father was when he worked as a manager at a small pharmacy in Harlem. He often worked late into the evenings and on many weekends as well to support our family. In spite of the demanding hours, he made sure to spend his limited days off giving my sister and I experiences that nurtured our interests and dreams. Whether that meant driving me to my volunteer job at a local aquarium or accompanying me to various model airplane shops, he always put the wants and needs of my sister and I above all else. Only as an adult did I come to learn that many of these happy memories during my childhood were juxtaposed with our family's financial situation hanging in a precarious balance. Despite these challenges, my father always supported my sister and I's aspirations and provided us with every opportunity to pursue them. My position today as a Naval Aviator and my sister's recent graduation from Brooklyn Law School and passing the Bar Exam are a direct testament to the love and support my father showed over the past two decades.

As I write this letter and reflect on all the lessons my father imparted on me, the theme that stands out above all else is his determination and resolve to see a goal through no matter how difficult. Although he was a man of few words, he taught through example; through the challenges he faced as a new immigrant to the United States, through financial hardship whilst raising a family, and through the quiet and steady determination to provide his children with a

normal and hopeful upbringing. Over the past 3 years in Navy Flight School competing with some of the country's brightest men and women, I often looked back at all the trials and tribulations my father was able to endure for the sake of his family as a reminder to never give up and fight to keep my place each and every day. His constant support and encouragement throughout the years long process to become a Naval Aviator whether it be through a simple phone call after a challenging flight, accompanying me on multiple cross country moves to my next duty stations, or simply keeping our family stable gave me the peace of mind to fly with clarity and conviction.

It has been incredibly difficult to watch my father live in fear and regret whilst I reside thousands of miles away, fighting to protect others whilst unable to protect the very man who gave me everything. I know that watching the anguish this case has caused our entire family weighs heavily on my father who lived each day to support us and shield us from harm. I am confident that the years he has spent reflecting on the matters of this case have shown him the error in his ways and will become a catalyst for change. I respectfully ask the Court for compassion and leniency in sentencing my father. I do not make this request to diminish the seriousness of what has happened, but because I truly believe my father has the character, humility and strength to learn from this experience and use it to become a better person. He has dedicated his entire life to supporting his family and I know he will continue to do so if given the opportunity.

Very respectfully,
William Kim

Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Honorable Gujarati,

My name is Jungsuh Kim and I am writing a letter on behalf of my father, Terry Kim who is scheduled to be sentenced in December. I hope this letter will help provide meaningful insight into the kind of person my father is and the role he has played in our lives.

I am the eldest daughter and have one younger brother who is currently a Navy Pilot. After my parents and I immigrated from South Korea, my brother was born and we moved around a lot until we were able to settle down in Westchester County. I graduated from Fordham University and recently just graduated from Brooklyn Law School this year and passed the New York State Bar Exam. It was a bittersweet moment to celebrate my accomplishments while grappling with the reality of my father's case.

My father has always been a man of few words. Growing up, I watched my father work tirelessly, often without recognition or complaint. As an immigrant adjusting to a new country, he faced many challenges that I could not fully understand as a child. Yet he never expressed his frustration or burdens and simply kept pushing forward for the sake of our family. He always made sure that my brother and I felt supported and that my mother would be able to spend more time with us growing up. Although he worked most nights, my father would always try to be home on time to eat dinner with us as a family, which became a cherished family ritual for us. Occasionally, he would even bring home some Korean BBQ or chicken wings and we would feast as a family while talking about our days. It is these everyday small moments I cherish with my family as our lives continue to get busier.

While his words were few, his actions resonated deep within my brother and me. His daily sacrifices showed us what perseverance truly looked like, as perseverance is daily sacrifice. He showed us what hard work meant and our family's well-being improved because of his consistent efforts. Throughout my academic journey, I have often faced disappointments such as not getting into my first-choice college or landing my dream internship. What I felt were personal failures to me, my father viewed as steppingstones. He always reminded me that hard work and courage in the face of setbacks are what mattered most. He encouraged my brother and me to dream boldly and work diligently, regardless of the outcome because he would always be there to help support our goals. My brother is now a Navy Pilot, achieving his childhood dream and I have graduated law school and passed the Bar Exam, which I have always worked hard towards. Throughout my

hardest moments I always kept my father in mind, remembering to always push forward with resiliency, humility, and an unwavering work ethic.

During law school, my father's support became even more evident. He would drive me back to school after every holiday break, offer to take me to dinner at the end of long weeks or drop off groceries because he knew I didn't have time to go to the store. Although these gestures may seem small, they were powerful reminders of the love and support he provided despite his limited time and constant responsibilities. As I have grown older, I have come to understand that no matter how busy my father was, he would always sacrifice time to put his family first to make sure that we felt supported.

The last few years have been deeply painful for our family. I have seen my father reflect more seriously than ever before. He has expressed remorse and worry about the burden this situation has placed on us. It has been difficult to watch someone who always carried himself with quiet confidence now grapple with shame, regret and fear about the future. Despite this, he has remained focused on our well-being and trying to keep our family steady during a time of great uncertainty. Even while I worried about this case through my final year of law school and bar preparation, my father continued to encourage me to stay focused and finish strong, reminding me that pursuing my goals was the best way I could support him. Seeing him face this hardship with humility and concern for our family has only reinforced who he is at his core and is a glimpse into the kind of person he truly is.

I respectfully ask the Court for leniency and compassion when considering my father's sentence. He is not a perfect man, but he is a good person and a better father; he is someone who has always tried to provide for his family and improve himself. I know he has reflected deeply on the mistakes that brought him here and I believe he is committed to learning from them. Throughout my life, I have known him to be a kind, hardworking, and devoted parent who consistently put his family first. This experience has forced him to reevaluate his priorities and while he continues to take pride in his work, he now makes a deliberate effort to spend more meaningful time with us. I think he has come to realize that the most valuable part of his life is the time he shares with his family. Despite his shortcomings, I am confident that he will carry these lessons with him and continue striving to become a better person

Thank you for your time and consideration.

Jungsuh Kim



The Honorable Judge Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Rev. Raphael Lee
573 Piermont Road
Demarest, New Jersey 07627

December 18, 2025

Dear Honorable Judge Gujarati,

My name is Fr. Raphael Lee, and I am the pastor of the Parish of St. Joseph in Demarest, New Jersey. Mr. Terry Kim is one of my most dedicated parishioners. Terry is a crucial member of our parish choir, and he is always willing to lend a helping hand whenever we have a parish event.

I found out about Terry's situation towards the end of last year. He approached me with a deep sense of remorse at the situation and shared with me what had happened. It became apparent to me that he was in trouble with the law while running his business and he expressed his regret for not complying with the legal requirements that were expected of him. I could also sense his fear while he spoke with me when he shared with me about the possible consequences of his actions. However, I could also see in him the determination to rectify the wrong he had done, whatever the cost may be.

I can't say that I am fully aware of the manner in which Terry ran his business. However, I can full-heartedly testify on his behalf of the way in which he served his community at our parish. Terry is one of the most diligent members of our parish. He is always present at various parish events and quietly serves others behind the scenes. He does not like to be noticed and always finds ways to accommodate others and relinquish praise for others. Even when others fall short and miss in the preparation, Terry never shied away from stepping up and doing whatever was necessary to fill in the void. His humble demeanor has always been a wonderful gift for our parish community.

Terry and his wife both serve our parish in this way for many years at our parish even before I arrived as their pastor. They have been a model family and Terry deeply regrets the mistake he has made. I know that Terry regrets his wrongdoing and is making every effort to make up for the damage done to others by his actions. Knowing his personality, I believe that he will do everything in his power to do what he can to make things right at all costs. I believe that he never meant to hurt anyone and is genuinely remorseful.

As his Pastor, I sincerely beg for leniency in your judgment for Terry. I am convinced that he will take responsibility for his actions and will spend the following years making up for his mistakes. I believe that he will continue to serve the community in good faith, wherever he may be.

Sincerely Yours,

*Rev. Raphael L.*

Rev. Raphael J. Lee, JCL
Pastor

Parish of St. Joseph 성 요셉 천주교회
573 Piermont Rd. Demarest, New Jersey 07627
Tel: 201) 767-3115 or 201) 768-2371 Fax: 201) 767-8874

Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
Dear Honorable Gujarati,

Terry Kim
3 Glen Pk Road
Purchase, NY 10577

December 23, 2025

Dear Honorable Gujarati,

I am writing this letter as I await my final sentencing on criminal charges of Medicare and Medicaid violations.

During these last three years I've had time to reflect on my actions and through the grace of the court, had the freedom to spend that time reflecting with my wife and kids. Through this challenging time, I've witnessed the life I worked hard to build for my family begin to crumble and my relationships with friends become strained or lost, all consequences of my own actions. I now fully understand the magnitude of my actions and have come to terms with the consequences.

Looking back, I deeply regret not operating my business in compliance with the law, even if that meant incurring significant losses. As I reflect on my illegal actions, I pledge to remain within the bounds of the law no matter what.

One day at Sunday Mass, the priest shared a story about the Pharisee and the tax collector that deeply resonated with me. Both men went up to the temple to pray – while the Pharisee prayed that he was thankful he was unlike others he believed were worse than himself, the tax collector prayed for God to take mercy on him and his own sins. The priest mentioned how often we judge ourselves leniently by the standards of those we deem inferior. Those words struck me harshly as I've always felt that way. I realized I was the Pharisee in the Bible. I thought I was living a good life, abiding by the law to some extent and breaking it when necessary to gain advantage. I tried to obey the law, but I felt helpless because of those around me who seriously violated it and broke the boundaries I should have kept. The standards I considered acceptable were beneficial to me, but ultimately, I broke the law. No matter how many difficulties I faced from all sides, no matter how many unreasonable actions I encountered, I deeply regret and reflect on my failure to strictly adhere to the law.

After my indictment in 2023, I have done everything I can to show my deep remorse and desire to live my life as a law-abiding citizen. I sold or closed all the pharmacies and medical-related businesses I had operated. I am doing my best to recover the damages by selling my building, providing all of my bank accounts, and investment accounts to pay as much of the criminal fines imposed by the government as

possible. I am also cooperating with the government through my attorney to obtain any necessary information or assistance.

Looking back, I deeply regret my decision to disobey the law, even if it meant harming my business. I reiterate my resolve to live with dignity and freedom from the law if given another opportunity. The time I failed to abide by the law was never free, and I lived under a constant weight. On the other hand, I am grateful for the opportunity to shed that burden.

During my 32 years of marriage, I've worked diligently to support my family. However, because of my grueling work schedule, I haven't been able to spend much time with them. My wife has always encouraged me to live a simple, ordinary life. I'm grateful to my wife for filling in for me at home and raising our children with dedication, and I'm also sorry to my two children for their diligent efforts despite the difficulties. My daughter graduated from law school and passed the Bar Exam, and my son is currently serving in the Navy as a pilot, a dream he had since childhood. I've always tried to live diligently and honestly and so I am deeply sorry to my family for putting them through such a shameful situation.

While it would be insufficient to fully explain my actions, I had no ill intent and am deeply remorseful. I deeply regret and reflect on my mistakes. I sincerely ask for your lenient judgment.
I want to spend the rest of my life atoning for my wrongdoings by living as an upstanding citizen for my family and country.

Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
Dear Honorable Gujarati,

December 23, 2025

Dear Honorable Gujarati,

I am writing this letter on behalf of my husband, Terry Kim, who is currently awaiting final sentencing for his criminal charges. My name is Hyunhee Kim and I have been married to my husband for 32 years.

In 1995, we came to the United States, where I have lived as a working woman while raising two children. Life as an immigrant without family or friends was not easy. Still, we worked hard, raised two children, and tried to live each day with sincerity, honesty and gratitude for the opportunities this country provides. I have always been proud to live in America — a country values justice and fairness.

My husband has always been an intelligent, sincere, and humble person. Though not a man of many words, he has a deeply caring heart. He worked tirelessly to support and protect our family, even when it meant long hours away from home. Throughout our 32 years of marriage, I often felt lonely as he devoted himself fully to his work, but I know that his sacrifices came from love and a desire to give our children stability and opportunities.

Our faith community has been an important part of our lives. Since our children were young, we have attended the Korean Catholic Church every Sunday, our one day of rest during the week. My husband served in the choir, while I volunteered in parish activities. Together, we tried to live with gratitude and help others in need whenever possible.

Helping others came naturally to my husband. I remember when he first started his business, an elderly woman came to the pharmacy seeking help with severe leg pain. She had drawn a picture by hand, asking us to find a massage device that could ease his discomfort. My husband searched tirelessly, making many inquiries and doing research until he finally found the exact item the woman needed. She later returned to the pharmacy, smiling and thankful, with her friends. That moment stayed with me.

He often helped elderly customers who spoke little English by translating letters or filling out forms for senior housing applications. Over the years, he assisted hundreds of people this way. One day, I asked him whether it was necessary to go to such lengths to help, he said, "Imagine if it were our parents going through such difficulties." That simple answer reflected his compassion and humility.

The past three years have been a time of deep reflection for me. My husband's indictment was a shocking and painful experience that turned my life upside down. I went through feelings of shame, sadness, and doubt. Yet, through it all, I have also reflected on the life we have shared and the person he has been –a husband, father and community member who always tried to do right by others.

During the last three years, our family has endured profound financial and emotional hardship. Our household income was abruptly disrupted, and my husband and I have relied solely on operating a small shoe store to support ourselves. Since the COVID-19 pandemic, the retail industry has continued to decline, and while we were barely able to sustain the business through our joint efforts, my husband's absence has made it extraordinarily difficult for me to operate the store alone. I now struggle to keep the business running, meet basic living expenses, and maintain any financial stability. The business is not financially viable enough for me to hire help to replace my husband's role, leaving a gap I cannot fill on my own.

These financial challenges are compounded by my ongoing health issues. I live with a chronic medical condition, hepatitis B, and continue to suffer from back problems resulting from a prior traffic accident. Because of these conditions, it is physically difficult for me to work full-time. My husband's support has been essential not only to the daily operation of our business but also to my ability to maintain a basic standard of living. His continued absence would impose a severe and ongoing hardship on me.

In addition to the financial strain, this experience has caused deep emotional distress and isolation. Media coverage of my husband's legal matters has caused a lot of isolation amongst our social circles and some articles would even disclose my full name and even the names of our children. Enduring this exposure has been devastating and has led to prolonged periods of fear, anxiety, and emotional exhaustion. Facing continued public scrutiny alone fills me with profound fear and sorrow, and each day requires significant strength simply to move forward.

Finally, I am deeply distressed by the possibility that I may be unable to travel to Korea to see my aging and ill parents during my husband's absence. Throughout our life in the United States, we rarely had health insurance, and we relied on visits to Korea to receive necessary medical care. The fear that I may not be able to see my parents again or attend their funeral should they pass away has weighed heavily on me and added greatly to my emotional suffering. I respectfully ask the Court to consider the cumulative and substantial hardship my husband's continued absence would impose on me when determining an appropriate sentence.

Despite everything that has occurred, I truly believe that his unlawful actions do not reflect the man I have known for over three decades. I hope that through this painful process, he has gained a deeper understanding of his mistakes and the principles that must guide the rest of his life.

As someone who cherishes a simple, honest life, I dream of spending my later years quietly with my husband, sharing ordinary moments, walking together and living as law-abiding citizens in this country we love.

While it is only right that my husband be held accountable for his actions, I respectfully and humbly ask the Court to consider leniency in light of my husband's character, lifelong hard work, and sincere remorse. If given the chance, I believe he will dedicate the rest of his life with integrity and gratitude.

Respectfully,
Hyunhee Kim